**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES HENRY MONTGOMERY, | |
| Plaintiff, | |
| v. | Civil Action No. 23-3931 (BAH) |
| | Judge Beryl A. Howell |
| ALEJANDRO N. MAYORKAS, *Secretary of Homeland Security*, | |
| Defendant. | |

| | |
|---|---|
| JAMES HENRY MONTGOMERY, | |
| Plaintiff, | |
| v. | Civil Action No. 24-1697 (BAH) |
| | Judge Beryl A. Howell |
| CATHY A. HARRIS, *Chairman, United States Merit Systems Protection Board*, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff James Henry Montgomery ("plaintiff"), proceeding *pro se*, has instituted two actions, raising substantially similar claims arising out of his former employment with the Federal Emergency Management Agency ("FEMA"). Construed liberally, his first amended complaint, in the earliest lawsuit filed in Civil Action No. 23-3931, alleges discrimination, retaliation, and hostile work environment claims in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, against defendant Secretary of Homeland Security Alejandro Mayorkas ("defendant Mayorkas"). Amend. Compl.

1

at 1-2, ECF No. 13.[1]  His second complaint, in Civil Action No. 24-1697, also construed liberally, asserts against Cathy A. Harris, Chairman of the Merit Systems Protection Board ("MSPB"), Deanne Criswell, Administrator, FEMA, and Secretary Alejandro Mayorkas (collectively "second action defendants") similar discrimination, retaliation, and hostile work environment claims, and he seeks judicial review of the MSPB's final order affirming his dismissal from civil service.  Compl. at 2-5, ECF No. 1.[2]  All defendants moved to dismiss the complaints against them for failure to state a claim.  *See* Def. Mayorkas' Mot. Dismiss ("Mayorkas' MTD") at 1, ECF No. 14; Second Action Defs.' Mot. to Dismiss ("2nd Act. Defs.' MTD") at 1, ECF No. 12.  The second action defendants have also moved to dismiss certain claims for lack of subject matter jurisdiction.  2nd Act. Defs.' MTD at 1.  The motions to dismiss are now ripe, and for the reasons stated below, defendants' motions are granted.

## I.    BACKGROUND

The facts below are drawn from both complaints and the attachments thereto as well as attachments to the second action defendants' motion to dismiss.

Plaintiff was employed by FEMA, a division of the Department of Homeland Security, starting in 1998.  Amend. Compl. at 4. Prior to July 2018, plaintiff had a stellar career as chief of the FEMA external civil rights division and was graded "Achieved Excellence."  *Id.*  Starting in July 2018, however, FEMA hired a new director and plaintiff was subsequently allegedly subject to numerous instances of discrimination.  *Id.*

---

[1]    Plaintiff filed his original complaint in Civil Action No. 23-3931 on December 27, 2023, and in response to defendant's first motion to dismiss, *see* Def.'s Motion to Dismiss, ECF No. 10, he timely filed his amended complaint.  Citations to the amended complaint are to ECF page numbers.

[2]    Citations to the complaint in Civil Action No. 24-1697 are to ECF page numbers.

### A.    Equal Employment Opportunity ("EEO") Complaint 1 (HS-FEMA-00328-2020)

On February 21, 2020, plaintiff filed his first EEO complaint (HS-FEMA-00328-2020) ("EEO Complaint 1") with the Equal Employment Opportunity Commission ("EEOC"), alleging that his employer discriminated against him and subjected him to a hostile work environment "on the bases of race (African-American), national origin (American), sex (heterosexual male), Age (77), and in reprisal for prior protected activity when the Plaintiff was subjected to harassment." *Id.* at 6-7.  Plaintiff's alleged harassment included that he was disparaged, called incompetent and a liar, had his requests for guidance, clarification of work assignments, and computer assistance ignored by his director, was suspended without pay for inappropriate conduct and failure to follow supervisory instruction, received an "unacceptable" performance rating, and was denied telework.  *Id.* at 6-8.  He further alleges that on unspecified dates that his director accused him of encouraging OER employees to file discrimination complaints.  *Id.* at 8. Additionally, the OER director allegedly rearranged the office to be able to observe employees talking with him to discourage conversations between the plaintiff and other OER employees. *Id.*  Finally, plaintiff amended his EEO complaint to add that he learned on June 26, 2020, that he was not selected for a job position.  *Id.*

### B.    EEO Complaint 2 (HS-FEMA-00307-2021)

About one year later, plaintiff filed his second EEO complaint (HS-FEMA-00307-2021) ("EEO Complaint 2") on March 2, 2021, alleging that his employer discriminated against him and subjected him to a hostile work environment on the bases of race, national origin, sex, age, and in retaliation for protected activity when he was suspended for a period of five days in September 2020 for careless or negligent performance of his duties and was ordered to return to work despite being on approved medical leave.  Amend. Compl. at 9.

On September 29, 2023, the EEOC consolidated plaintiff's appeals of the agency's dismissals of EEO Complaints 1 and 2 and issued an opinion affirming their dismissal. Ex. E, Final EEOC Opinion, 2nd Act. Defs.' MTD, at 1 n.2, ECF No. 12-6.

### C.    EEO Complaint 3 (HS-FEMA-01706-2021)

On October 11, 2021, plaintiff filed his third complaint (HS-FEMA-01706-2021) ("EEO Complaint 3") with the EEOC alleging that the agency discriminated against him on the bases of "race (African-American), national origin (African-American), sex (male), religion (Protestant), color (Black), disability, age (78), and in reprisal for prior protected" activity when his employer failed to restore his unused annual leave. Amend. Compl. at 5-6.

On October 19, 2023, the EEOC affirmed the agency's dismissal of plaintiff's third complaint. Ex. I, Final EEOC Opinion, 2nd Act. Defs.' MTD, at 1, ECF No. 12-10.

### D.    EEO Complaint 4

Plaintiff allegedly filed an EEO complaint ("EEO Complaint 4") on December 8, 2021, alleging that he was discriminated on the "bases of race (African American), national origin (African America), sexual orientation (heterosexual), religion (Protestant), color (Black), disability, age (78), and in reprisal for prior protected EEO activity." Amend. Compl. at 4. He further alleges that "management did not select" him for three separate job openings and deemed him unqualified for another. *Id.* at 3-4. "In each instance," the person selected to fill the roles "was less qualified than" plaintiff and "was not part of the Plaintiff's protected class." *Id.* at 4.

### E.    MSPB Decision

On March 18, 2020, FEMA issued plaintiff a notice of proposed removal due to poor performance and misconduct. Ex. A, MSPB Initial Decision, 2nd Act. Defs.' MTD, at 2, ECF No. 12-2. On June 3, 2021, after plaintiff responded to the notice, he was removed from federal service. *Id.* at 3. On July 2, 2021, plaintiff appealed his removal to the MSPB, asserting five

affirmative defenses which included "harmful procedural error; violations of law, rule, or regulation; whistleblower retaliation; improper implementation of the [Performance Improvement Plan ("PIP")]; and that there was no basis for the PIP." *Id.* at 25. After a hearing, an administrative judge affirmed the agency's removal decision on May 1, 2024. Ex. 1, MSPB Final Decision, Compl., at 1, ECF No. 1-1.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence the court's subject matter jurisdiction over the claims asserted. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Effectuating this limitation, federal courts are "forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for [them] to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED. R. CIV. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the

5

facts alleged' . . . and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Moreover, in evaluating subject matter jurisdiction, the court "may consider materials outside the pleadings." *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Herbert*, 974 F.2d at 197 (noting that a court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" when analyzing of motion to dismiss for lack of subject matter jurisdiction).

### B.      Federal Rule of Civil Procedure 12(b)(6)

A plaintiff need only provide "a short and plain statement of [his] claim showing that [he] is entitled to relief," FED. R. CIV. P. 8(a)(2), and that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration in original) (internal quotation marks omitted).  Ideally, "[e]ach allegation [of a complaint is] simple, concise, and direct." FED. R. CIV. P. 8(d)(1).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 556 U.S. at 570).  A facially plausible claim consists of facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a

defendant has acted unlawfully.'"  (quoting *Iqbal*, 556 U.S. at 678)).  In deciding a motion under Rule 12(b)(6), the whole complaint must be considered, with all factual allegations accepted as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555; *see also Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1265 (D.C. Cir. 2019).  The court cannot, however, "assume the truth of legal conclusions, nor [does it] 'accept inferences that are unsupported by the facts set out in the complaint.'"  *Arpaio*, 797 F.3d at 19  (alteration in original) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)); *see Iqbal*, 556 U.S. at 681 (stating that conclusory allegations are "not entitled to be assumed true").

In applying these standards to pleadings filed by *pro se* litigants, the court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss," *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)), and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice," *Hurd v. D.C., Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (brackets omitted) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  In addition, a *pro se* complaint must "'be liberally construed' and '. . . held to less stringent standards than formal pleadings drafted by lawyers.'"  *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Erickson*, 551 U.S. at 94).  Nonetheless, a *pro se* plaintiff must comply with the Federal Rules of Civil Procedure and "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).  As such, while "detailed factual allegations" are not necessary

to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

The pending motions to dismiss plaintiff's complaints in both civil actions before this Court are addressed separately below.

### A.    Motion to Dismiss Complaint in Civil Action No. 24-1697

In Civil Action No. 24-1697, plaintiff seeks judicial review of the MSPB removal decision because this decision, in plaintiff's view, was "not supported by the legally required evidence and analysis." Compl. at 2 ("removal claim").  He also alleges whistleblower retaliation, under 5 U.S.C. §§ 2302(b)(8) and (9), *id.* at 3-5 ("whistleblower claim"), and discrimination, hostile work environment, and retaliation claims under Title VII and ADEA, *id* at 6-11 ("discrimination claims").  Second action defendants argue that subject matter jurisdiction is lacking to hear plaintiff's removal and whistleblower claims and that he untimely filed his discrimination claims in this action.  Second Action Defs.' Mem. Supp. MTD ("2nd Act. Defs.' Mem.") at 8-12, ECF No. 12-1; Second Action Defs.' Reply Supp. MTD ("2nd Act. Defs.' Reply") at 1-2, ECF No. 15.  Plaintiff offers no argument in response.  *See generally* Pl.'s Opp'n Second Act. Defs.' MTD ("Pl.s' Opp'n") (not responding to defendants' arguments).[3]

---

[3]    Plaintiff's failure to respond to the second action defendants' arguments may be deemed a concession that subject matter jurisdiction is lacking.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *Texas v. United States*, 798 F.3d 1108, 1113-14 (D.C. Cir. 2015) (same); *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("In the District of Columbia Circuit, it is established that an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012).  Even absent a finding of concession by plaintiff, however, defendants are correct that subject matter jurisdiction does not exist.  *See, e.g.*, *Hornsby v. Thompson*, No. 22-cv-1472 (RC), 2023 WL 196185, at *10 (D.D.C. Jan. 17, 2023) (recognizing the *pro so* plaintiff may have conceded the argument that subject matter jurisdiction did not exist but still conducting analysis to reach this conclusion).

    1.    ***Subject Matter Jurisdiction Is Lacking Over Plaintiff's Appeal Of The MSPB Decision And His Whistleblower Claims.***

Regarding his removal and whistleblower claims, plaintiff has failed to carry his "burden [to] establish[] the facts that support jurisdiction by a preponderance of the evidence." *Bread for the City, Inc. v. U.S. Dep't of Agric.*, 211 F. Supp. 3d 327, 329 (D.D.C. 2016) (citations omitted). First, "[t]he Federal Circuit Court of Appeals has 'exclusive jurisdiction of an appeal from a final order or final decision of the MSPB,'" *Woodruff v. McPhie*, 593 F. Supp. 2d 272, 278 (D.D.C. 2009) (quoting 28 U.S.C. § 1295(a)(9) and citing 5 U.S.C. § 7703(a), (b)), unless the plaintiff pursued a "mixed case" before the MSPB where he "both challenge[d] adverse personnel actions otherwise appealable to the MSPB and allege[d] that discrimination played a part," *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1041 (D.C. Cir. 2008). In that narrow, excepted circumstance, a federal district court may possess subject matter jurisdiction over the appeal of the MSPB's final decision. *See Kloeckner v. Solis*, 568 U.S. 41, 44-50 (2012) (describing 5 U.S.C. § 7703(b)(2) as providing federal courts subject matter jurisdiction over mixed case appeals). Plaintiff, though, did not argue before the MSPB that his removal was based on discrimination or retaliation for EEO activity, *see* MSPB Initial Decision at 31 n.2, and thus, he has failed to demonstrate that he presented a mixed case appeal before the MSPB. *See Kloeckner*, 568 U.S. at 44 ("When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" (emphasis in original)); *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 260 (D.D.C. 2013) ("[I]n order to bring a mixed case appeal before the MSPB, . . . a plaintiff *must* allege that the defendant has taken one of the five [types of employment actions] against him *and* that 'a basis for the action was discrimination' in violation of Title VII." (emphasis added)).

While plaintiff has alleged discrimination claims in this action simultaneously, his appeal to the MSPB raised no discrimination claims but only "arguments . . . regarding the [lack of evidence undergirding the] misconduct charges [against him], performance-based removal, and affirmative defenses of a harmful procedural error, due process violation, and whistleblower reprisal."  MSPB Final Order at 1-2; *see also* MSPB Initial Decision at 31 n.2 ("[Plaintiff] did not raise discrimination or retaliation for EEO activity as an affirmative defense.").  In short, plaintiff does not have an underlying mixed case appeal "to the MSPB on which the Court can base its jurisdiction." *Greenhouse v. Geren*, 574 F. Supp. 2d 57, 66-68 (D.D.C. 2008).  As such, subject matter jurisdiction over plaintiff's claim with respect to his appeal of the MSPB's decision is lacking, and the claim must be dismissed. *See, e.g.*, *Hornsby v. Thompson*, No. 22-cv-1472 (RC), 2023 WL 196185, at *10-11 (D.D.C. Jan. 17, 2023) (noting that "the Court could dismiss the remaining two claims because, without Plaintiff's retaliation claim, this case is no longer a mixed case and the Federal Circuit has exclusive jurisdiction"); *Dade v. Hawking*, No. 15-cv-284 (TSC), 2015 WL 831202, at *1, *1 n.1 (D.D.C. Feb. 25, 2015) (dismissing case for lack of subject matter jurisdiction as plaintiff failed to plead that she raised a mixed case appeal before the MSPB); *Greenhouse*, 574 F. Supp. 2d at 66-68 (D.D.C. 2008) (determining plaintiff's claim was not a "mixed case" and dismissing it for lack of subject matter jurisdiction).

Second, subject matter jurisdiction over plaintiff's whistleblower claims is also lacking because he did not pursue a mixed case appeal to the MSPB.  A federal district court does not have subject matter jurisdiction over claims brought under the Whistleblower Protection Act ("WPA"), *see* 5 U.S.C. § 2302(b)(8), absent the plaintiff "bring[ing] both discrimination and WPA claims to the MSPB as a 'mixed case.'"  *Stella v. Mineta*, 284 F.3d 135, 143 (D.C. Cir. 2002).  For the reasons stated above, plaintiff did not bring a mixed case before the MSPB, so

"[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain" plaintiff's whistleblower cause of action.  *Id.* at 144.  Accordingly, plaintiff's whistleblower claims are dismissed for lack of subject matter jurisdiction.  *See Abou-Hussein*, 953 F. Supp. 2d at 261-62 (dismissing plaintiff's whistleblower claims for want of subject matter jurisdiction because plaintiff did not pursue a mixed case appeal before the MSPB and holding that "this Court, and indeed, any federal district court, lacks subject matter jurisdiction over it").

### 2.    *Plaintiff's Discrimination Claims Are Untimely.*

Finally, plaintiff's discrimination claims are time-barred in this action.  Relying only on facts as stated in EEO Complaints 1 and 3, plaintiff received right-to-sue notices on September 29, 2023, and October 19, 2023, respectively.  Compl. at 6-11; 2nd Act. Defs.' Mem. at 11. Upon receipt of those letters, plaintiff had ninety days to file a claim under Title VII and ADEA, *see* 42 U.S.C. § 2000e-16(c), 29 U.S.C. § 626(e), but he did not file the second action asserting the discrimination claims based on EEO Complaints 1 and 3 until May 31, 2024, roughly four months later.  "The 90-day time limit functions like a statute of limitations and although a court has the power to toll this limitations period, it can only exercise that power in extraordinary circumstances."  *Dyson v. Hagel*, No. 14-cv-663 (KBJ), 2014 WL 2959108, at *1 (D.D.C. July 2, 2014) (internal quotation marks and citation omitted).  Plaintiff provides no reason for equitable tolling of the deadlines in his briefing and potentially confuses this case with his timely filing of his discrimination claims in *Montgomery v. Mayorkas*, No. 23-cv-1391 (BAH), discussed *infra* Part III.B.

In sum, plaintiff has untimely filed his Title VII and ADEA claims in this action and offers no reason to toll the deadline, requiring dismissal of his discrimination, hostile work environment, and retaliation claims.  *See, e.g., Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58-59 (D.C. Cir. 2023) (affirming dismissal of plaintiff's case after

11

he filed his complaint one-day late and failed to demonstrate that he was entitled to equitable tolling); *Strickland v. Buttigieg*, No. 20-cv-1890 (JEB), 2021 WL 3207041, at *2-3 (D.D.C. July 29, 2021) (dismissing plaintiff's complaint because lawsuit was filed 116 days after final EEOC action and there were no extraordinary circumstances that warranted equitable tolling); *Alridge v. Rite Aid of Washington, D.C.*, 146 F. Supp. 3d 242, 248-49 (D.D.C. 2015) (collecting cases and holding that "[i]n less egregious circumstances involving less of a delay than the year-long delay at issue here, judges on this Court have not hesitated to conclude that the *pro se* plaintiff is not entitled to equitable tolling"); *Davis v. Vilsack*, 880 F. Supp. 2d 156, 161-63 (D.D.C. 2012) (dismissing plaintiff's complaint because the complaint was filed approximately five months after the ninety-day deadline and plaintiff's situation did not merit equitable tolling).[4]

Accordingly, the Complaint in Civil Action No. 24-1697 must be dismissed.

### B.     Motion to Dismiss Civil Action No. 23-1391

Construed liberally, plaintiff asserts claims, in Civil Action No. 23-1391, for discrimination, retaliation, and hostile work environment in violation of Title VII and ADEA. *See* Amend. Compl. at 4-9.[5]   Defendant Mayorkas argues that plaintiff has failed to state a claim

---

[4]     The second action defendants have also moved to dismiss Chairman Harris and Administrator Criswell because they "are not proper parties to this action."  2nd Act. Defs.' Mem. at 8.  Given that subject matter jurisdiction is lacking and plaintiff's reasons for naming them are unclear from the face of his complaint, a decision regarding whether they are properly named would be best addressed by a court with proper jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety.").  Plaintiff is cautioned, however, that with respect to his request for review of the MSPB's decision "the agency responsible for taking the personnel action shall be the respondent," 5 U.S.C. § 7703(a)(2), and with respect to Administrator Criswell, "the only proper defendant in suits brought under [Title VII and the ADEA] is the head of the department or agency being sued," *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011).

[5]     Plaintiff mentions in passing the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq., see* Amend. Compl. at 1, suggesting that he wishes to rely on 42 U.S.C. § 1981 as another basis to state a claim for employment discrimination.  The Supreme Court, however, has "established that Title VII [is] the exclusive judicial remedy for claims of discrimination in the context of federal employment."  *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 29 (D.D.C. 2012) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976)).  Accordingly, "[t]he Court lacks subject matter jurisdiction to hear plaintiff's allegations of race discrimination and retaliation asserted pursuant to § 1981," and to the extent plaintiff has asserted employment discrimination claims on §1981, they "must be dismissed."  *Id.* at 30.

upon which relief can be granted because he "alleges nothing giving rise to an inference of discrimination or retaliation."  Def. Mayorkas' Mem. Supp. MTD ("Def. Mayorkas' Mem.") at 4, ECF No. 14.  With respect to plaintiff's hostile work environment claim, defendant argues that he did not administratively exhaust his claim, and that even if he did, plaintiff "provides no factual matter at all to support an inference of harassment."  Def. Mayorkas' Mem. at 8. Plaintiff, in response, does not address defendant's arguments, and, instead, provides a cut-and-paste of his amended complaint with an updated introduction section discussing the applicable legal standard.  *See generally* Pl.'s Opp'n Def.'s MTD ("Pl.'s Opp'n"), ECF No. 16 (not addressing defendant's arguments).  For the reasons stated below, defendant's motion to dismiss for failure to state a claim is granted.[6]

### 1.    *Plaintiff Has Failed To State Any Claims For Employment Discrimination.*

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin,"  42 U.S.C. § 2000e-2(a)(1), and the ADEA provides that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . be made free from any discrimination based on age,"  29 U.S.C. § 633a(a).  "Under Title VII [and] the ADEA . . . the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  A plaintiff without "direct evidence of discrimination" usually "must resort to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."

---

[6]    Defendant has also moved to dismiss plaintiff's Amended Complaint "in its entirety under Rule 8," because this pleading "short as it is, gives no fair notice of what [he] is alleging in this case," Def. Mayorkas Mem. at 4, but the pending motion is resolved on alternative grounds, under Rule 12(b)(6).

*Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006). Under this framework, the plaintiff "must prove by a preponderance of the evidence 'that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Id.* (citation omitted).

At the pleading stage, however, "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (alteration in original), but he still must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Webster v. Haaland*, No. 23-cv-3050 (RC), 2024 WL 4240286, at *5 (D.D.C. Sept. 19, 2024) ("To survive a motion to dismiss, claims of discrimination . . . require at least a minimal factual basis from which the Court can draw 'an inference of discrimination.'" (quoting *Czskalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007))).

The amended complaint fails to state a cause of action for discrimination because it simply "presents no facts to tie . . . difficult interpersonal events to" any protected characteristic. *Burford v. Yellen*, 246 F. Supp. 3d 161, 179 (D.D.C. 2017). Plaintiff alleges that his employer "discriminated against him" on the basis of various protected characteristics: (1) "when" his approved leave was revoked and his unused annual leave balance was not restored, Amend. Compl. at 5-6; (2) "when" he was disparaged and called incompetent, a liar, and incapable of competent behavior, had his requests for guidance and computer assistance ignored by his director, was suspended without pay for inappropriate conduct and failure to follow supervisory instruction, received an "unacceptable" performance rating, and was denied telework, *id.* at 6-8;

and (3) "when" he was issued a suspension letter and a return to duty letter, was retroactively

denied sick leave, and was placed on a performance improvement plan, *id.* at 8-9.  These

allegations, though, embody the exact types of "mere 'legal conclusions, couched as factual

assertions,'" that cannot survive a motion to dismiss.  *Yuvienco v. Vilsack*, No. 23-cv-186 (RC),

2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024) (quoting *Nurriddin v. Bolden*, 818 F.3d 751, 756

(D.C. Cir. 2016)); *see also id.* ("Although the 'initial burden' of pleading Title VII's 'because of'

element is 'not onerous,' a plaintiff cannot survive a motion to dismiss by providing 'threadbare'

or conclusory allegations of discrimination; nor can a plaintiff state a claim 'merely [by]

invok[ing] [her] race [or national origin], in the course of a claim's narrative." (alterations in

original) (quoting *Doe #1 v. Am. Fed'n of Gov't Emps.*, 543 F. Supp. 3d 75, 102-03 (D.D.C.

2021))).  "While [his] experiences may have been frustrating," *Burford*, 246 F. Supp. 3d at 179,

the amended complaint is devoid of facts connecting the purported discriminatory actions to

protected characteristics, foreclosing an inference that these experiences were "'because of' his

status as a member of a protected class," *King v. Pierce Assocs., Inc.*, 601 F. Supp. 2d 245, 248

(D.D.C. 2009) (quoting 42 U.S.C. § 2000e-2(a)(1)-(2)).  *See also Yuvienco*, 2024 WL 727712, at

*3 ("Beyond . . . conclusory statements, there are no factual allegations that [plaintiff's]

supervisors held or expressed animus against her based on her race or national origin, or for that

matter, any factual allegations at all concerning how [her] race and national origin factored into

her employment."); *Bishop v. U.S. Dep't of Agric.*, No. 19-cv-1836 (TNM), 2020 WL 3064421,

at *3 (D.D.C. June 9, 2020) ("[Plaintiff] manages only to allege, in conclusory fashion, that he is

a member of a protected class who suffered an adverse employment action because of his race.

There are no factual allegations to support these assertions, and without them [plaintiff's] Title

VII claim fails."), *aff'd*, No. 20-5170, 2020 WL 6600053 (D.C. Cir. Oct. 20, 2020); *Arnold v.*

15

*Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (dismissing complaint because it lacked "sufficient allegations demonstrating that such treatment stemmed from discrimination on the basis of age").

To the extent plaintiff seeks to plead a claim by comparison to selectees who were hired in lieu of him for certain positions, *see* Amend. Compl. at 4-5, his claim still fails.  "In the context of a failure to hire or promote, an inference of discrimination can be established by a plaintiff's elimination of 'the two most common legitimate reasons . . . to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 293 (D.D.C. 2015) (alteration in original) (quoting *Stella*, 284 F.3d at 145).  Here, plaintiff alleges, based on EEO Complaint 4, that he "was not selected" for three positions and was "deemed . . . [u]nqualified" for another, and "[i]n each instance," the person selected to fill the roles "was less qualified than" plaintiff and "was not part of the Plaintiff's protected class."  Amend. Compl. at 4.  That is, however, insufficient to state a claim.

"A successful failure to hire claim requires, among other things, that the employee 'applied for and was qualified for an available position.'"  *Webster v. Spencer*, No. 17-cv-1472 (DLF), 2020 WL 2104231, at *10 (D.D.C. May 1, 2020) (quoting *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000)).  While plaintiff alleges that he was not selected for certain positions, and deemed unqualified for another, he does not allege that he, in fact, applied for the positions. *See Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 435 (D.D.C. 2015) ("[Plaintiff] cannot complain about the selection of younger or white persons for jobs for which she did not apply.").  That, alone, is fatal to his claim.

Furthermore, while a "very low bar for alleging an inference of discrimination" applies, *Poland v. D.C. Water & Sewer Auth.*, No. 16-cv-2031 (TSC), 2022 WL 2452609, at *4 (D.D.C. July 6, 2022) (quoting *Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519 (CKK), 2019 WL 690343, at *8 (D.D.C. Feb. 19, 2019)), the plaintiff is nonetheless required to provide "well-pled factual allegations to support the assertion of discrimination," *Bishop v. U.S. Dep't of Agric.*, No. 22-cv-635 (TNM), 2022 WL 17415049, at *2 (D.D.C. Dec. 5, 2022), *aff'd*, No. 23-5008, 2023 WL 6323760 (D.C. Cir. Sept. 28, 2023).  For example, in *Brown v. McDonough*, the plaintiff's discrimination claim survived a motion to dismiss because he alleged that he "was ranked number (1) amongst all the interviewees" for a position but that a person "outside of [plaintiff's] protected class" was chosen for the role.  No. 22-cv-3209 (RC), 2024 WL 1344417, at *7 (D.D.C. Mar. 29, 2024).  Additionally, in *Thomas v. WMATA*, the plaintiff passed the threshold for sufficient pleading at the motion to dismiss stage by alleging that plaintiff applied for a position, the defendant hired another candidate even though that candidate did not meet the posted job requirements, the selected candidate was allegedly less qualified than the plaintiff, and that defendant incorrectly asserted that the chosen candidate met the qualification by double-counting pieces of the chosen individual's work history.  305 F. Supp. 3d 77, 86 (D.D.C. 2018). In contrast, here, plaintiff fails to allege certain critical facts that would give rise to an inference of discrimination, including, for example, whether he actually applied for the positions, was interviewed for the positions, was qualified for the positions, who the selectees were or why the selectees were less qualified than him, and in what ways they were not part of his protected class, especially here where plaintiff has alleged that he is a member of multiple protected classes.  *See Bishop*, 2022 WL 17415049, at *3 ("[Plaintiff] does not, for example, allege the race 'of at least some of the relevant persons' selected, or whether any decisionmaker made a statement

reasonably construed as discriminatory in itself.  Nor does [plaintiff] suggest that there is a

'significant qualifications differential' between himself and the hired candidates."  (first quoting

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); and then quoting *Barnette*, 453 F.3d at

518)); *Arnold*, 251 F. Supp. 3d at 273 (dismissing complaint and advising that "[i]n order to

proceed, Plaintiff must allege more specific facts that lay out what happened, who was involved

(including, *e.g.*, the age of the person who was actually promoted), and how such conduct

constitutes age discrimination.").[7]

      In sum, plaintiff alleges, coextensive with facts he previously alleged in his EEO

complaints, that he is a member of various protected classes and that he suffered, what the

government "assum[es]," *see* Def. Mayorkas' Mem. at 5, may be adverse employment actions.

Liberally construed, however, the allegations in the amended complaint do not "connect any of

those events to his" age, race, national origin, sex, or any other protected characteristic, *Lee v.

McDonough*, No. 22-cv-319 (RBW), 2024 WL 3858820, at *7 (D.D.C. Aug. 19, 2024),

necessitating dismissal of plaintiff's Title VII and ADEA discrimination claims.  *See, e.g.*,

*Yuvienco*, 2024 WL 727712, at *3 (dismissing plaintiff's employment discrimination because

plaintiff's claims were "predicated on . . . vague and conclusory allegations, and she [made] little

connection between her employment issues and her race, national origin, or age"); *Thweatt v.

WMATA*, No. 23-cv-1185 (CKK), 2024 WL 939989, at *4 (D.D.C. Mar. 5, 2024) (dismissing

plaintiff's employment discrimination claims because the "facts alleged in the complaint do not

---

[7]     Plaintiff also argues that he learned that he "was not selected" for a position on June 26, 2020, but in
addition to failing to allege that he applied for the position, he provides no allegations regarding who, if at all, was
chosen for the position nor the selectee's qualifications compared to plaintiff's.  Amend. Compl. at 8.  The bare
allegation that he was not chosen for a job is not enough to state a claim for discrimination.  *See Bishop v. U.S.
Dep't of Agriculture*, No. 22-cv-635 (TNM), 2022 WL 17415049, at *2 (D.D.C. Dec. 5, 2022) (dismissing
employment discrimination claim in the failure-to-hire context "[g]iven the dearth of factual allegations . . . to
conclude that [plaintiff] was treated differently" in the job selection process), *aff'd*, No. 23-5008, 2023 WL 6323760
(D.C. Cir. Sept. 28, 2023).

link directly or indirectly plaintiff's race, sex, or any other protected classification" to the adverse employment action).

>    2.    *Plaintiff Has Failed To State A Claim That His Employer Retaliated Against Him For Protected Activity.*

Plaintiff also argues that he suffered adverse employment actions in retaliation for protected activity. *See* Amend. Compl. at 4-10. For the same reasons stated above, defendant argues that plaintiff has failed to allege facts giving rise to an inference of retaliation. Def. Mayorkas' Mem. at 4. Defendant is correct, and plaintiff's retaliation claims must be dismissed for failure to state a claim.

"Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *see also* 29 U.S.C. § 623(d) (ADEA statutory provision prohibiting retaliation); 42 U.S.C. § 2000e-3(a) (Title VII statutory provision prohibiting retaliation). To state a claim for retaliation under Title VII and ADEA, the plaintiff "must show (1) that [they] engaged in statutorily protected activity; (2) that the [plaintiff] suffered a materially adverse action by the [plaintiff's] employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of the Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013); *see Jones*, 557 F.3d at 677 (stating that the legal test for retaliation under ADEA is the same as for Title VII). In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). This standard "encompass[es] a broader sweep of actions than those in a pure discrimination claim," *Baloch*, 550 F.3d at 1198 n.4, but "[t]ypically . . . involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment

19

with significantly different responsibilities, or a decision causing significant change in benefits,'"
*Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d
1286, 1293 (D.C. Cir. 2003)).

     Plaintiff states he experienced "reprisal for prior protected EEO activity," *see* Amend.
Compl., at 4, 5, 6, and 9, with the same list of allegedly adverse actions described *supra* Part
III.B.1, but he does not allege what constitutes the protected activity.  While "[f]iling a complaint
of discrimination . . . plainly constitutes protected activity," *Walker v. Mattis*, 319 F. Supp. 3d
267, 271 (D.D.C. 2018), plaintiff fails to provide facts that explain which retaliatory acts stem
from which EEO complaint.  Furthermore, the amended complaint seemingly alleges that he
experienced retaliatory actions prior to engaging in the protected activity, "preclud[ing] a
determination that the protected activity caused the defendant to retaliate against the plaintiff,"
*Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009).  *See* Amend. Compl. at 4,
5, 6, and 9 (claiming that plaintiff faced retaliatory actions on dates that precede when plaintiff
engaged in protected activity).  Generously assuming that plaintiff is instead alleging that EEO
Complaint 1 (the earliest alleged EEO complaint) is the basis for retaliatory action in EEO
Complaint 2, and so forth, and that at least one of the experiences he faced constitutes an adverse
action, plaintiff still has not pled any facts establishing a causal connection between them.

     "A plaintiff can sometimes plead causation by relying solely on the fact that an adverse
action shortly followed the plaintiff's protected activity."  *Ho v. Garland*, 106 F.4th 47, 52 (D.C.
Cir. 2024).  The "temporal connection," though, "must be 'close.'"  *Id.* (quoting *Singletary v.
District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003)).  While "'neither the Supreme Court
nor this court has established a bright-line' rule, 'the Supreme Court has cited circuit decisions
suggesting that in some instances a three-month period between the protected activity and the

adverse employment action may, standing alone, be too lengthy to raise an inference of causation.'" *Id.* (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012)). Dimming any bright-line-three-month rule, in *Taylor v. Solis*, the D.C. Circuit rejected a retaliation causation argument based on temporal proximity when only two and a half months elapsed between the employee's activity and the adverse action. 571 F.3d 1313, 1322 (D.C. Cir. 2009). Here, each assumed adverse employment action happened more than three months after each instance of protected activity. Specifically, (1) plaintiff's EEO Complaint 1 was filed on February 21, 2020, and the first alleged adverse employment action in EEO Complaint 2 occurred about six months later, on September 8, 2020; (2) plaintiff's EEO Complaint 2 was filed on March 2, 2021, and the first alleged adverse employment action in EEO Complaint 3 occurred nearly four months later, sometime in June 2021; and (3) plaintiff's EEO Complaint 3 was filed on October 11, 2021, and the first alleged adverse employment action in EEO Complaint 4 occurred slightly more than three months later, on January 16, 2022. Plaintiff's retaliation allegations, thus, meet or exceed a three-month interval between each protected activity and an adverse employment action and "standing alone" fail "to raise an inference of causation." *Ho*, 106 F.4th at 52; *see also Taylor*, 571 F.3d at 1322 (rejecting interval of two and a half months as establishing temporal proximity "on the record [in the case]"); *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73-74 (D.D.C. 2019) ("Although 'neither the Supreme Court nor the [this Circuit] has established a bright-line three-month rule,' this Circuit has found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation" (internal citations omitted)); *see also Ho*, 106 F.4th at 52 (finding plaintiff satisfied causation even though a 10-month gap elapsed between protected activity and adverse employment action because he "[did] not rely solely on" temporal

proximity); *Harris*, 791 F.3d at 70 ("Having alleged a five-month gap between [defendant's] knowledge of [plaintiff's] discrimination complaint and his termination, supplemented by facts that rebut 'the two most common legitimate reasons' for termination and also give rise to a reasonable inference of pretext, [plaintiff] has met that burden." (internal quotation marks and citations omitted)). Without causation, plaintiff has failed to state a claim that defendant retaliated against him in violation of Title VII and ADEA, requiring dismissal.

### 3. *Hostile Work Environment*

Finally, plaintiff alleges in his amended complaint, based on EEO Complaints 1 and 2, that he was subject to a hostile work environment. Amend. Compl. at 6-9. Defendant challenges this claim, first, because plaintiff failed to exhaust his hostile work environment claim with respect to EEO Complaint 2, Def. Mayokas' Mem. at 6-9, and also because plaintiff "provides no factual matter at all to support an inference of harassment" based on a protected status, *id.* at 8. Assuming, without deciding, that both of plaintiff's hostile work environment claims have been exhausted, he has still failed to state a claim.

"To prevail on" a hostile work environment claim, "plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]he court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance" to determine whether a hostile work environment exists. *Id.* The "standards for judging hostility are sufficiently demanding," *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998), and "the plaintiff must establish that the allegedly harassing

conduct complained of was based on a protected characteristic," *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (citation omitted).

Plaintiff has failed to state a claim that he suffered a hostile work environment.  He alleges that his boss "failed to respond to [his] documents timely," "ignored his sick leave request," "refused to respond to requests for instructions, clarification of work assignments, and requests for guidance on expectations," "suspended him," and on certain occasions "disparaged" him and called him "incompetent, a liar, and incapable of competent behavior."  Amend. Compl. at 6-8.  He also alleges that he received a performance rating of "[u]nacceptable" and was denied a telework schedule.  *Id.* at 9.  Neutralizing plaintiff's claim is that he, again, has failed to allege facts "link[ing] . . . the hostile behavior and [his] membership in a protected class."  *Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 233 (D.D.C. 2013) (quoting *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)); *accord Baloch*, 550 F.3d at 1201 ("[N]one of the comments or actions directed at [plaintiff] expressly focused on his race, religion, age, or disability—unlike in some hostile work environment cases.").  There are simply no alleged facts, even liberally construed, that permit an inference that any hostile behavior he allegedly suffered was *because of* a protected characteristic.  *See generally* Amend. Compl.  Similarly slim claims have been dismissed for failing to state a hostile work environment claim based on even more concerning allegations.  *See, e.g.*, *Dieng v. Am. Insts. for Rsch. in the Behav. Scis.*, 412 F. Supp. 3d 1, 14 (D.D.C. 2019) (dismissing Title VII hostile work environment claims based on "denial of teleworking," "yelling at [plaintiff] during staff meetings," "ignoring [plaintiff] at those meetings," and "constant questioning of [plaintiff's] work"); *Newton v. Off. of the Architect of the Capitol*, 839 F. Supp. 2d 112, 117 (D.D.C. 2012) (dismissing hostile work environment claims and noting that "'threatened' job related consequences for the employee's refusals to meet

workplace expectations did not demonstrate a hostile work environment pervaded by

discrimination"); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010)

(dismissing a hostile work environment claim where the plaintiff was placed on leave because of

a false accusation, colleagues criticized his accent, he was told that he could easily be replaced

with an American, and his supervisor told him that they would not hire other Africans);

*Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work

environment claim based on "criticisms of [plaintiff's] work," "removal of important

assignments, lowered performance evaluations, and close scrutiny of assignments by

management," and "denial of leave"); *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316,

at *16 (D.D.C. Aug. 18, 2022) (dismissing a hostile work environment claim where plaintiff

alleged that her supervisors "provid[ed] only negative feedback during evaluations; impos[ed]

unreasonable and impossible deadlines; fail[ed] to provide clear communications or timely meet

with her to discuss her performance plan for an upcoming year; [and] deni[ed her] leave")

(internal quotations omitted)).  At bottom, plaintiff's claim must be dismissed because none of

the facts alleged "clear the 'high hurdle' of pleading a hostile work environment," *Watkins v.

Dep't of Justice*, No. 23-cv-766 (RDM), 2024 WL 4362156, at *7 (D.D.C. Sept. 30, 2024), and

do not establish that any allegedly harassing conduct "was based on a protected characteristic,"

*Byrd*, 931 F. Supp. 2d at 45.

## IV.    CONCLUSION

For the foregoing reasons, in Civil Action No. 24-1697, plaintiff's removal and

whistleblower claims are dismissed for lack of subject matter jurisdiction, and his employment,

retaliation, and hostile work environment claims are dismissed as time barred.  In Civil Action

No. 23-3931, plaintiff's claims are dismissed, without prejudice, for failure to state a claim.

Separate orders will be entered contemporaneously.


Date: December 4, 2024

_____
**BERYL A. HOWELL**
United States District Judge